IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

MONICA VEGA-MORALES,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

CIV. NO.: 14-1708 (SCC)

**MEMORANDUM AND ORDER**

    Plaintiff Mónica Vega Morales asks this court to review the decision of Defendant Commissioner of Social Security ("the Commissioner"), denying Plaintiff's application for disability benefits. Docket No. 1. After a review of the record and the parties' memoranda, we remand this matter to the Commissioner.

*STANDARD OF REVIEW*

    Under the Social Security Act ("the Act"), a person is

disabled if he is unable to do his prior work or, "considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d). The Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). Thus, the Commissioner's decision must be upheld if we determine that substantial evidence supports the ALJ's findings, even if we would have reached a different conclusion had we reviewed the evidence *de novo. Lizotte v. Sec'y of Health & Human Servs.*, 654 F.2d 127, 128 (1st Cir. 1981).

The scope of our review is limited. We are tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. *See Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's decision must be reversed if his decision was derived "by ignoring evidence, misapplying law, or judging matters entrusted to experts."

*Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). In reviewing a denial of benefits, the ALJ must have considered all of the evidence in the record. 20 C.F.R. § 404.1520(a)(3).

The Act sets forth a five-step inquiry to determine whether a person is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id.* Step one asks whether the plaintiff is currently "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If he is, he is not disabled under the Act. *Id.* At step two, it is determined whether the plaintiff has a physical or mental impairment, or combination of impairments, that is severe and meets the Act's duration requirements. 20 C.F.R. § 404.1520(a)(4)(ii). The plaintiff bears the burden of proof as to the first two steps. Step three considers the medical severity of the plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). If, at this step, the plaintiff is determined to have an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P., app. 1, and meets the duration requirements, he is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the plaintiff is not determined to be disabled at step three, his residual functional capacity ("RFC") is assessed. 20 C.F.R.

§§ 404.1520(a)(4), (e). Once the RFC is determined, the inquiry proceeds to step four, which compares the plaintiff's RFC to his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the plaintiff can still do his past relevant work, he is not disabled. *Id.* Finally, at step five, the plaintiff's RFC is considered alongside his "age, education, and work experience to see if [he] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If the plaintiff can make an adjustment to other work, he is not disabled; if he cannot, he is disabled. *Id.*

## *BACKGROUND AND PROCEDURAL HISTORY*

Plaintiff made her initial application for disability benefits on May 4, 2011, alleging that her disability began on November 1, 2010. *See* TR. at 425-31.[1] The claim was initially denied, as was the reconsideration, and Plaintiff thereafter requested a hearing. *See id.* at 352-61. The hearing was held on May 14, 2013. *See* TR. at 30-49. The ALJ determined that Plaintiff was not disabled from November 1, 2010, through the date that the decision was issued. *See id.* at 14-25. The appeals council refused to review the ALJ's decision, *see id.* at 1-5, and she filed

---

1. We will refer to the Social Security Transcript as "TR." throughout.

this appeal. Docket No. 1.

At step three, the ALJ determined that Plaintiff did not have a combination of impairments equaling the severity of one of those listed at 20 C.F.R. pt. 404, subpt. P, app. 1. TR. at 17-20. At step four, the ALJ concluded that Plaintiff retained the Residual Functional Capacity ("RFC") to perform "light, unskilled" work with certain "nonexertional limitations." *Id.* at 20 and Docket No. 26 at page 9. The ALJ then found that while she could no longer perform her past relevant work, there existed work that she could perform; therefore, she was not disabled. TR. at 24-5.

## *ANALYSIS*

Plaintiff alleges three errors in the ALJ's decision. First, Plaintiff claims that the ALJ, in determining her RFC, erred in not giving controlling weight to Plaintiff's treating psychiatrist. Second, Plaintiff avers that the ALJ's finding that she could still perform alternate work is not supported by the record. And third, that the ALJ did not accurately convey to the Vocational Expert ("VE") the full extent of Plaintiff's limitations.

The first "error" concerns the ALJ's determination at step five of the sequential evaluation process, that Plaintiff retained an RFC permitting "light, unskilled work." TR. at 20. In

reaching that conclusion, the ALJ relied on the evaluation of Dr. Luis Toro, a consultative examiner who examined Plaintiff once, on October 15, 2011. *See* TR. at 17-8 and 693-95. The ALJ gave "great weight" to Dr. Toro's assessment and opinion because it was "based on a comprehensive evaluation of the claimant." TR. at 18. Dr. Toro found Plaintiff to be "neat and clean in appearance," "in good contact with reality" and "cooperative." *Id.* at 694. Dr. Toro also perceived Plaintiff to be "calm," with "coherent, relevant and spontaneous" speech, and "no evidence of disorganization of thought processes, ideas of reference, or delusions." *Id*. The report concluded that she was "able to handle funds adequately and capable of normal interpersonal relationships." *Id*.

According to the ALJ, the findings regarding Plaintiff's mental abilities was supported by the opinion of Dr. José Casiano, a state agency psychiatric consultant who examined Plaintiff on November 17, 2011, respectively. Docket No. 26 at pages 10- 11. Dr. Casiano opined that Plaintiff could "sustain pace and attention and persist at work activities during a regular workday or workweek, without a special help or supervision."*Id*. at 349.  The ALJ gave "great weight" to the opinions of both Dr. Casiano as it was "consistent with the rest

| VEGA-MORALES v. COMMISSIONER | Page 7 |
|---|---:|

of the medical evidence." *Id*. at 23.

Plaintiff criticizes the ALJ's reliance on Dr. Toro's clinical findings, even though he only examined her on one occasion, and contrasts it with the ALJ's disregard of her treating physician, Dr. Fabio H. Lugo Gutierrez's opinion. Furthermore, Plaintiff argues that her condition has worsened since Dr. Toro's examination on October of 2011, a fact that was also not considered by the ALJ.

The RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," *i.e.*, "8 hours a day, for 5 days a week." SSR 96-8P, 1996 WL 374184, *1 (July 2, 1996). In making an RFC assessment, the ALJ "must consider all relevant evidence in the record, including the opinions and statements by all medical sources." *Hynes v. Barnhart*, 379 F. Supp. 2d 220, 224 (D.N.H. 2004) (citing 20 C.F.R. §§ 404.1545(a) & 404.1564). The Commissioner's regulations require the ALJ to give the opinions of treating physicians "on the nature and severity" of a plaintiff's impairments "controlling weight," at least where the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with other substantial evidence" in the

case record. 20 C.F.R. § 404.1527(c)(2). *But see* 20 C.F.R. § 404.1527(d)(2) (noting that "final responsibility for deciding" various issues, including an impairment's nature and severity, "is reserved to the Commissioner"). The ALJ's opinion must "provide a clear explanation for its evidentiary basis and reasons for rejecting medical source opinions." *Id.* (citing *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001)). The ALJ must "always give good reasons" for the weight it gives a treating source opinion. 20 C.F.R. § 404.1527(c)(2); *see also Polanco-Quiñones v. Astrue*, 477 F. App'x 745, 746 (1st Cir. 2012) (per curiam).

The Commissioner's regulations require the ALJ to give the opinions of treating physicians "on the nature and severity" of a plaintiff's impairments "controlling weight," at least where the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2). *But see* 20 C.F.R. § 404.1527(d)(2) (noting that "final responsibility for deciding" various issues, including an impairment's nature and severity, "is reserved to the Commissioner"). The ALJ must "always give good reasons" for the weight it gives a treating source

| VEGA-MORALES v. COMMISSIONER | Page 9 |
|---|---:|

opinion. 20 C.F.R. § 404.1527(c)(2); *see also Polanco-Quiñones v. Astrue*, 477 F. App'x 745, 746 (1st Cir. 2012) (per curiam).

The evidence on record shows that Plaintiff's condition has worsened since Drs. Toro and Casiano examined her in 2011. Plaintiff was partially hospitalized on 4 occasions during 2012 due to her mental condition, specifically, from January 9, 2012 until January 13, 2012, (TR. at 728-752); from May 14, 2014 until May 23, 2012, (TR. at 701-727); from June 18, 2012 until June 25, 2012, (TR. at 620-55); and from July 16, 2012 until July 20, 2012 (TR. at 758-765). Even though the ALJ discussed the hospitalizations in the Decision, they were ultimately not given much weight because of their short duration and Plaintiff's alleged improvement upon discharge. *Id*. at 18. In fact, the ALJ gave no weight to the opinions of treating physicians Dr. Lugo and Dr. Ingrid Mendez Altieri because they were inconsistent with the rest of the medical evidence insofar as such evidence revealed "quick recovery after partial ambulatory hospitalizations" and positive response to treatment. *See* TR. at 23.

However, even if Plaintiff showed a better prognosis at discharge than she displayed when admitted, the fact is she experienced several relapses, as evidenced by her numerous

| VEGA-MORALES v. COMMISSIONER | Page 10 |
|---|---|

partial hospitalizations a few months apart. Moreover, the reports of her treating physicians are also telling. Plaintiff has been under the treatment of Dr. Lugo since May 29, 2009, prior to the date of the onset of the alleged disability. TR. at 766. On July 23, 2012, Dr. Lugo evaluated Plaintiff and submitted a report. TR. at 570. Dr. Lugo, who stated that Plaintiff receives treatment on a monthly basis, diagnosed her with recurrent major depression, panic disorder and agoraphobia. TR. at 570. The report states that Plaintiff's response to the psychiatric treatment "was limited" and that she had "marked limitations" in her daily functioning. *Id*. Based on these observations, Dr. Lugo assigned Plaintiff a Global Assessment of Function ("GAF") of 46.*Id*.

On April 11, 2013, Dr. Lugo reported "marked limitations" in Plaintiff's understanding and memory, and "extreme limitations" in her sustained concentration and persistence . *See* TR. at 769. Furthermore, according to the evaluation, Plaintiff's psychiatric condition had worsened "due to the severity and persistence of multiple medical problems." *Id.* at 772. Dr. Lugo concluded that Plaintiff was a "danger to herself and to others" and assigned her a GAF of 44. *Id*.

Dr. Lugo's assessments are supported by the evaluation of

| VEGA-MORALES v. COMMISSIONER | Page 11 |
|---|---|

Dr. Mendez Altieri, who had been examining Plaintiff since August 3, 2012. Dr. Mendez submitted a report on May 9, 2013 where she described Plaintiff's mental condition as "chronic," with a diagnosis of "major recurrent severe depression, and generalized anxiety disorder." *See* TR. at 773. She assigned Plaintiff a GAF of 50. *Id*.

We find that the ALJ failed to properly explain why the testimonies of the treating physicians were not given "controlling weight." Even though the Decision states that their opinion was inconsistent with other medical information on the record, we find that the evidence says otherwise. The ALJ mostly relied on the testimony of Dr. Toro, who only examined Plaintiff once, and on the discharge reports of the partial hospitalizations. Moreover, Drs. Lugo and Mendez were the last doctors to examine Plaintiff and actually found that her condition has worsened. Thus, we find that ALJ's conclusion regarding Plaintiff's RFC merits a new look at the more recent medical evidence in her record.

## *CONCLUSION*

Because the ALJ failed to properly explain the findings with regard to Plaintiff's RFC, this matter is REMANDED to the Commissioner for further proceedings consistent with this opinion.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of March, 2016.

       <u>S/ SILVIA CARREÑO-COLL</u>
       UNITED STATES MAGISTRATE JUDGE